UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

          -against-

KEITH RANIERE,

                  Defendant.

MEMORANDUM & ORDER
18-CR-204 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

On June 19, 2019, after a six-week trial, a jury found Defendant Keith Raniere guilty of all seven counts for which he was charged. (*See* Jury Verdict (Dkt. 735); Judgment (Dkt. 969) at 1-2.) For his racketeering charge, the prosecution proved beyond a reasonable doubt that Mr. Raniere committed eleven predicate acts, including sexual exploitation of a child and possession of child pornography. (*See* Jury Verdict.) Now before the court is Mr. Raniere's motion to compel the production of evidence relating to his child exploitation and child pornography predicate acts. (Not. of Mot. (Dkt. 1191); Mot. (Dkt. 1192).)

For the reasons discussed in this memorandum and opinion, Mr. Raniere's motion is DENIED.

I. BACKGROUND

The court assumes familiarity with the background of this case, reviewing it only as relevant to the present motion.

While leader of Nxivm, Keith Raniere engaged in a "campaign of manipulation, exploitation and abuse" that caused many "lasting pain, trauma and hardship." (Sentencing Mem. (Dkt. 966).) For this, Mr. Raniere was convicted of racketeering, racketeering conspiracy, forced labor conspiracy, wire fraud conspiracy, sex trafficking conspiracy, and two counts of sex trafficking. (*See* Judgment at 1-2.) Mr. Raniere's racketeering charge included

1

eleven predicate acts which the prosecution proved beyond a reasonable doubt, including child exploitation and possession of child pornography. (*See* Jury Verdict.)

To prove the predicate acts of sexual exploitation of a child and possession of child pornography, the Government presented evidence showing that Mr. Raniere took naked photos of Camila, one of Mr. Raniere's victims, when she was fifteen years old. (Gov Resp. (Dkt. 1213) at 19.) In addition to the photos themselves, which were found on a hard drive seized from Mr. Raniere's home, (*id.* at 1-2), evidence supporting these charges included: messages from Camila where she referenced her sexual relationship with Raniere beginning in 2005 when she was fifteen years old; communications from Mr. Raniere referencing the photos; testimony from Camila's sister that she was aware of the relationship prior to Fall 2006; a folder containing nude pictures of the other women with whom Mr. Raniere had a sexual relationship and in which the pictures of Camila were found; testimony that Mr. Raniere sought to take similar pictures of other women; Camila's medical records, which included statements indicating she was in a sexual relationship with the same partner since she was underage; and testimony from Camila's sister identifying her as the person in a sanitized version of the photos. (Gov. Resp. (Dkt. 1213) at 19-20 (citing trial exhibits and the trial transcript).)

Prior to Mr. Raniere's trial, the photographic evidence and the metadata relating to the photographic evidence was available to the Defendant. Mr. Raniere's defense team, including a retained forensic expert, was given access to review the evidence at the office of the FBI's Computer Analysis Response Team (CART). (Gov. Resp. at 2-3, 9 n.4.) And at trial, the Defendant's counsel cross-examined FBI Senior Forensic Examiner Booth about this evidence. (*See generally* Trial Tr. (Dkt. 797).) Booth acknowledged in this testimony that the metadata was not reliable as to when the photos were taken, (Tr. 4940:13-15.), and also that he

was unaware of who accessed the camera card on September 19, 2018 while it was in the FBI's possession. (Trial Tr. 4973:19-25)

Camila did not testify at Mr. Raniere's trial, but she submitted a victim impact statement prior to his sentencing, (Camila Impact Statement (Dkt. 965-1)), and a sworn declaration in response to this motion. (*See* Camila Decl. (Dkt. 1213-1).) In this declaration, Camila affirms that she reviewed each of the photographs at issue and that is certain she is the subject of each of them. (*Id.* ¶ 5.) She vividly recalled the circumstances in which the photos were taken and that Mr. Raniere took the photos. (*Id.*) And she confirms that the photos were taken when she was 15 years old. (*Id.* ¶¶ 8-10.) In both the victim impact statement and the declaration, Camila also affirms that Mr. Raniere began to sexually abuse her in 2005, when she was 15 years old and he was 45 years old. (Camila Decl. ¶ 5; Camila Impact Statement at 1.)

## II. MR. RANIERE'S MOTION TO COMPEL

On April 14, 2023, Mr. Raniere filed the present motion to compel the production of evidence. (*See* Mot.) Raniere seeks to analyze and test evidence relating to the child pornography photos and includes unsupported assertions that the photos were fabricated. (Mot. at 1, 12; Reply (Dkt. 1223) at 6-7.)[1] The Defendant bases these assertions on a report that the Defendant attached as an exhibit to his Rule 33 motion filed in June 2022. (*See generally* Kiper Report (Dkt. 1178-2).) That report reviews the photos' metadata and the chain of custody of evidence introduced at trial. (See Mot. at 2; Rule 33 Mot. (Dkt. 1178) at 1-2.)

The Government filed a response to both Mr. Raniere's motion to compel production of evidence and Mr. Raniere's outstanding

---

[1] Specifically, Mr. Raniere requests (1) two forensic copies of the camera card and corresponding FTK log files; (2) a file listing of the Hard drive that contained the images of child pornography (the "Western Digital hard drive"); and (3) CART examination notes. (Mot. at 2-4; Reply at 1-2.)

3

motion for a new trial on July 21, 2023. (Gov. Resp.; *see also* Not. of Rule 33 Mot. (Dkt. 1176); Rule 33 Mot.) The Government attached Camila's declaration to this response as well as a sworn declaration from a senior computer scientist with the FBI who was not involved in Mr. Raniere's prosecution. (Camila Decl.; Loveall Decl. (Dkt. 1213-3).) In this declaration, Mr. Loveall responds to each of the key findings in the Kiper Report after reviewing the evidence at issue. (*See* Loveall Decl.) Mr. Loveall concludes that the report "repeatedly ignores plausible explanations for observed phenomena in favor of allegations of tampering." (*Id.* ¶ 4.)

Mr. Raniere filed a Reply to the Government's response on October 23, 2023. (*See* Reply.) In this Reply, Mr. Raniere asked the court to consider only the motion to compel production of evidence, and not his outstanding Rule 33 motion. (*Id.* at 7.) Mr. Raniere asserts that doing so is necessary to allow him to properly support his motion for a new trial. (*Id.*) Mr. Raniere's Reply addresses portions of Loveall's report, (*see* Reply at 5-6), but he generally does not respond to Loveall's reasoned explanations for the metadata issues, which thoroughly refute Kiper's key findings. (*See generally* Reply; *see also* Loveall Decl.) The Reply also does not respond to the Government's review of the significant evidence introduced at trial, separate from the photos' metadata, that demonstrates that the photos were taken by Mr. Raniere when Camila was fifteen years old. (*See* Gov Resp. at 18-20 (citing to the trial transcript and exhibits introduced at trial).) Lastly, the Defendant does not respond to Camila's declaration in which she confirms the authenticity of the photos, that she was fifteen when the photos were taken, and that Mr. Raniere took these photos at the time when he began sexually abusing her. (*See generally* Reply; *see also* Camila Decl.).

The court now considers the arguments raised in Mr. Raniere's motion to compel production of evidence.

4

### III. LEGAL STANDARD AND DISCUSSION

Mr. Raniere provides no legal justification for his argument that he has a post-conviction right to access the evidence he requests. He cites to no cases where a court has allowed post-conviction access to digital evidence to which a defendant could have had access to prior to trial and which he could have adequately reviewed with diligence. Instead, his motion primarily relies on citations to cases decided in different contexts which concern the Government's pretrial disclosure obligations under *Brady* and post-conviction actions seeking access to testing of DNA evidence which are wholly different from the evidence that Mr. Raniere requests. (*See generally* Mot.; Reply). These cases provide no support for Mr. Raniere's motion.

A review of the record and the case law provided by the Defendant makes it clear that Defendant's motion is frivolous.

For the sake of clarity, however, the court reviews why it is denying Mr. Raniere's motion: specifically, why he does not have: (1) *Brady* rights to this information; (2) post-conviction due process rights to this information; and (3) the right to this information under principles of "elemental fairness."

#### A. *Brady* Rights

Mr. Raniere argues that the evidence must be disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963). (Mot. at 4-6.) Under *Brady*, the Government has an obligation to provide criminal defendants with exculpatory evidence in the Government's possession in time for its effective use at trial. *See United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001). Because *Brady* focuses on the Government's *pretrial* disclosure obligations, it provides "the wrong framework" when considering post-conviction motions to compel production of evidence. *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009); *see also Harvey v. Horan*, 285 F.3d 298, 310 (4th Cir. 2002) (Luttig, J.,

concurring in the denial of rehearing en banc) ("The asserted right [to post-conviction DNA testing] is not one to material, exculpatory evidence necessary to ensure a fair trial.").[2] Instead, Mr. Raniere's request "must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief." *Osborne*, 557 U.S. at 69.

The court therefore rejects Mr. Raniere's argument that *Brady* compels the production of this evidence.

### B. Post-Conviction Due Process Rights

Mr. Raniere next argues that he has a due process right to this evidence despite the post-conviction posture of this case. (Mot. at 6.) To support this argument, he primarily relies on Judge Luttig's concurrence in the denial of the rehearing en banc in *Harvey v. Horan*, 285 F.3d 298 (4th Cir. 2002) and Justice Stevens' dissent in *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52 (2009).[3] (See Mot. 1, 6-7, 9-12; Reply at 2.) These cases considered actions under 42 U.S.C. § 1983 relating to state criminal court proceedings where the Fourth Circuit and the Supreme Court denied postconviction requests for DNA testing. *See Osborne*, 557 U.S. at 75; *Harvey*, 278 F.3d at 372, rehearing denied, 285 F.3d 298 (4th Cir. 2002).

Even separate from these opinions being issued in cases *denying* access to post-conviction evidence, they do not support Mr. Raniere's request. The evidence at issue here is wholly different from DNA evidence, which has been shown capable of conclusively demonstrating a petitioner's innocence. *See Osborne*, 557

---

[2] When quoting case law, except as otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

[3] Defendant states that "[t]he law is clear" in support of its proposition and then cites to Justice Stevens's dissent in *Osborn* without noting that the argument came from the dissent and was therefore not binding law on this court. (Reply at 2.) Parties before the court have a responsibility to not deliberately misstate the law or otherwise mislead the court.

6

U.S. at 99 (Stevens, J. dissenting) ("Recent scientific advances in DNA analysis have made it literally possible to confirm guilt or innocence beyond any question whatsoever, at least in some categories of cases."); *Harvey*, 285 F.3d at 305 (Luttig, J. concurring in the denial of rehearing en banc) ("STR DNA tests can, in certain circumstances, establish to a virtual certainty whether a given individual did or did not commit a particular crime.") Neither opinion that Mr. Raniere cites says anything about a right to access the type of evidence at issue here—photo metadata whose alleged anomalies the Government thoroughly explained. (*See generally* Loveall Decl.). Adopting the reasoning in these cases is especially inappropriate when, as here, there is substantial corroborating evidence to confirm the photos' authenticity. *See supra*.

Further, the majority in *Osborne* held that there is no "freestanding" substantive due process right even to DNA evidence. *Osborne*, 557 U.S. at 72. There may be a "state-created" right to post-conviction DNA evidence, but such a right is derived from statutes establishing procedures for testing this evidence. *Id.* at 68-69.[4] While there is a federal statute establishing procedures for a petitioner to access post-conviction DNA testing, *see* 18 U.S.C. § 3600,[5] no similar statute governs the post-conviction disclosure of the evidence Mr. Raniere requests. Instead, Mr. Raniere appears to solely base his request on the kind of freestanding right to post-conviction evidence that *Osborne* rejected. 557 U.S. 52 at 72-74.

---

[4] If such a right is found, then the question becomes whether the procedures attendant to vindicating that right are consistent with principles of "fundamental fairness." *Id.* at 69-70.

[5] The federal statute requires, among other things, that the applicant asserts under penalty of perjury that they were actually innocent of the federal offense, *id.* § 3600(a)(1) and that the proposed testing would raise a "reasonable probability that the applicant did not commit the offense," *id.* § 3600(a)(8)(B).

(7 of 12), Page 7 of 12    Case: 24-778, 03/25/2024, DktEntry: 2.1, Page 7 of 12

Thus, Mr. Raniere cannot claim a due process right to support his motion.

### C. Whether Fundamental Fairness Would Require Disclosure

Mr. Raniere ultimately asks the court to apply a standard of "elemental fairness." The court reviews why, even assuming this standard applied, it would also not support his motion.

In considering what would constitute elemental fairness in this context, the court finds that at least two minimum requirements must be met: (1) Mr. Raniere must raise a reasonable probability that the production of evidence would demonstrate that he did not commit relevant offenses; and (2) the evidence must provide support for his Rule 33 motion, the success of which is Mr. Raniere's ultimate goal. (Reply at 7.)[6]

#### 1. Reasonable Probability of Innocence

In *Osborne*, the Supreme Court discussed fundamental fairness in the context of statutes setting procedural requirements to access DNA evidence. See *Osborne*, 557 U.S. at 63, 70 (discussing this statute approvingly as consistent with principles of fundamental fairness). As discussed, there is not a federal statute allowing access to the evidence that Mr. Raniere requests, and post-conviction DNA testing is unique in its proven record of conclusively demonstrating innocence. *See supra; see also Osborne*, 557 U.S. at 99 (Stevens, J. dissenting). For the purpose of this motion, however, the court assumes that Mr. Raniere must, at a minimum, meet similar requirements for it to be fundamentally unfair to deny his request. In particular, he must demonstrate that testing the requested evidence would raise a "reasonable

---

[6] As reviewed *infra*, the first of these requirements is derived from the federal statute setting requirements for post-conviction DNA testing. *See* 18 U.S.C. § 3600(a)(8)(B).

8

probability that [he] did not commit the offense." 18 U.S.C. § 3600(a)(8)(B).

Mr. Raniere comes nowhere close to meeting this standard, however. Substantial evidence supports the jury verdict that Mr. Raniere was guilty of child exploitation and child pornography, even separate from the photos' metadata. *See supra*. Camila's sworn declaration, where she states with certainty that Mr. Raniere took these photos and that they were taken in 2005, provides additional support for this finding. (*See generally* Camila Decl.)

Mr. Raniere bases his request for the digital camera card and hard drive on a report discussing metadata and the chain of custody for evidence in FBI custody. (*See* Kiper Report.) However, as Mr. Loveall's declaration explains, the Kiper Report's technical findings do not support the conclusions that Mr. Kiper and Mr. Raniere draw from it. (*See* Loveall Decl.)

The Kiper Report and Mr. Raniere's motion also do not explain how the Report's findings, even if true, would support conclusions about the photos' materiality or authenticity. For instance, the Report does not explain why the findings would justify its conclusions that the metadata at issue constituted "key facts upon which the prosecution's argument relied" and that it would be a "miscarriage of justice" for the prosecution to have relied on this information. (Kiper Report at ECF 13, 49). Such statements are ineffective in the absence of any discussion of the corroborating evidence presented at trial or that Mr. Raniere's defense team had access to and awareness of the metadata discussed in the report. (Gov. Resp. at 10-12, 19-20.) The Report also raises speculative questions, stating at one point that "it leaves me to ponder: What else were they lying about?" (Kiper Report at ECF 49.) Fundamental fairness does not require authorizing the fishing expedition that the Defendant requests based on such unpersuasive analysis. *Cf. United States v. Alegria*, 192 F.3d 179,

9

189 (1st Cir. 1999) (upholding district court's denial of evidentiary hearing where defendant offered "conclusory assertions" of bad faith but no persuasive evidence); *see also United States v. Davis*, 836 F. App'x 754, 758 (11th Cir. 2020) ("A blanket assertion of fabricated evidence not substantiated by any credible source is not enough to warrant a new trial or even an evidentiary hearing.").

Mr. Loveall's report, refuting Kiper's key findings, offers a far more plausible and convincing explanation of any anomalies in the photos' metadata. Mr. Loveall's report is further supported by the ample evidence presented at trial and Camila's declaration that she is certain of the circumstances and timing of the photos. In sum, the evidence presented at trial, the Government's expert report, and Camila's declaration substantially outweigh the arguments raised in the Report and Mr. Raniere's motion. Mr. Raniere therefore does not raise a reasonable probability that testing the evidence would demonstrate he did not commit the offense. *Cf.* 18 U.S.C. § 3600(a)(8)(B).

### 2. Support for New Trial Motion

Mr. Raniere has also not shown that, even if the request was granted, it would support his Rule 33 motion for a new trial based on the discovery of new evidence. New trial motions are granted "sparingly and in the most extraordinary circumstances, and only in order to avert a perceived miscarriage of justice." *United States v. Gramins*, 939 F.3d 429, 444 (2d Cir. 2019). For the evidence to be considered "newly discovered evidence, not only must the defendant show that the evidence was discovered after trial, but he must also demonstrate that the evidence could not with due diligence have been discovered before or during trial." *United States v. Forbes*, 790 F.3d 403, 408-09 (2d Cir. 2015).

As discussed, the evidence that Mr. Raniere requests was known to the Defendant at the time of the trial. Mr. Raniere's defense

10

team, which included a forensic evidence expert, was given access to this evidence, and the Defense even questioned the FBI forensic examiner about the metadata and chain of custody issues that are central to the Kiper Report. *See supra*. Thus, this evidence is not "newly discovered." *See United States v. Bout*, 144 F. Supp. 3d 477, 487 (S.D.N.Y. 2015) ("Rule 33 does not allow for a new trial based on evidence that could have been discovered before trial, let alone evidence that was part of the trial record.").[7] And because the evidence is not "newly discovered," it would not support Mr. Raniere's motion for a new trial. *See United States v. Stewart*, 433 F.3d 273, 296–97 (2d Cir. 2006).

In sum, Mr. Raniere provides no legal support for his request, and even if applying his desired standard of "fundamental fairness," Mr. Raniere fails to show that access to this evidence violates fundamental fairness.

---

[7] To the degree that the Defendant suggests he deserves a new trial based on an alleged *Brady* violation, this argument would also fail because, among other reasons, the evidence was also not "suppressed." *See Payne*, 63 F.3d at 1208 ("[E]vidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of [that] evidence").

11

## IV. CONCLUSION

Mr. Raniere's request to compel the Government to provide the requested information is therefore DENIED.

Because the Defendant has stated that access to the requested evidence was necessary to competently reply to the Government's opposition to his Rule 33 motion, the Defendant is DIRECTED to inform the court whether Mr. Raniere still intends to file this separate Reply. If so intending, the Reply is due by November 30, 2023.

SO ORDERED.

Dated:   Brooklyn, New York
         November 6, 2023

                                           s/Nicholas G. Garaufis
                                           NICHOLAS G. GARAUFIS
                                           United States District Judge